Shaceeleord, J.,
delivered the opinion of the Court.
The plaintiffs in error were indicted in the Circuit Court of Smith County, for horse stealing; were tried by a jury of the county, and a verdict and judgment rendered against them, and sentenced to serve three years in the penitentiary. A new trial was moved for, and overruled; from which they have appealed to this Court.
The facts necessary to be stated, for the understanding of the principles involved, are: On the night of the 26th of August, 1868, a mare and horse belonging to Dean, and one to Mrs. Donahue, were taken from their possession. On the nest day, the horses were found in the possession of the plaintiffs in error. The day before the taking, the plaintiffs in error, with several other persons, met at a shop in the neighborhood, in which the propriety and legality of taking property from those in hostility to them, was discussed and determined upon. The plaintiffs in error stated that they had been robbed by a party of rebel guerrillas of their property a few days before, and they were going ■ to take the property of rebels in return, to compensate themselves, and that they had the right *341 to do it. The plaintiff, Smith, had a few days previous been robbed of his horse — his hat and clothing stripped from him. Lacaster had been, a short time previous, robbed of all his property. The plaintiffs in error were unconditional Union men, and the opinion prevailing in the community, was, that they had the right to take the property of rebels to re-imburse themselves.
On the day after the re-capture of the property, Dean was arrested by the Federal troops, and being a soldier in the rebel army, was sent to a Northern prison, where he died. Lancaster was a soldier in the Federal service, and at that time was on furlough. Smith joined the Federal army a few days after the taking. There is no proof to convict the plaintiffs in error with the arrest of Dean. The counsel for the plaintiffs in error objected to the introduction of the testimony of Dean’s arrest and subsequent imprisonment and death, unless the State proved the plaintiffs in error had some connection with it. The objection was overruled, and the evidence permitted to go to the jury.
The Circuit Judge was requested on the trial to charge the jury: “Every taking is not larceny; to make it such it must be accompanied by circumstances which demonstrate a felonious intent, and the intent being necessary to complete the offense, if a man under the honest impression that he has a right to the property, takes it into his possession, it is not larceny. In this case, if the defendants honestly believed, that, by the rules of war, they had the right *342 to take the property of rebels, to re-imburse themselves in their losses occasioned by rebels taking their property; if such was the case, and acting under the honest belief, they did take the property charged in the indictment, from the rebels, it would not be larceny, but a trespass; that the question of intent, was one for the jury, and they must look to all the circumstances of the case, to see how this is. If the defendants did not act under this honest belief, but used it as a cloak to commit larceny, then it would be no protection.'’ Which instructions the Court refused; and in substance, stated to the jury, that the principles of law would not be changed on account of the prevalence of the opinion in the community that the two contending parties had the right to take property to re-imburse themselves; that the opinion was essentially wrong, both in law and morals, and would not be an excuse for that which would, in its absence, be theft; that there is no difference in an act which would be larceny if committed by one who did not entertain such an opinion, and one who did. It is not a case of honest mistake, or ignorance of fact. It is not a case of ignorance of law; and if it was, it would be no excuse.
We think there was no error in the Court to refuse the instructions as asked for; and the propositions of law, stated by the Court, are correct, as general principles. The question of intention should have been left to the jury. To constitute the crime of larceny the felonious intention is necessary; it is the *343 essence of the crime. The Court say, in the case of Duncan vs. The State, 7 Hum., 150: “It is a sound principle of criminal jurisprudence, that the intention to commit the crime is the essence of the crime.” In Wharton’s Criminal Law, 557, it is held, that every taking of the property of another without his knowledge or consent, is not larceny; to make it such, it must he accompanied by such circumstances as demonstrate a felonious intention.
The charge of His Honor is very elaborate and learned. He enters into and discusses the distinction between fraud and felony. His distinctions are well and ably drawn, and to minds practiced in such discussions, easy of comprehension, but incapable of being understood by the ordinary class of jurors, whose minds are not trained in scholastic learning.
The plaintiffs in error were entitled to have the propositions of law governing their case, plainly stated to the jury, in such a manner as to enable them to comprehend the principles involved. This, we think, has not been done in this case. There is no proof in the record that the plaintiffs in error had any agency in the arrest and imprisonment of Dean, from whom the horses were taken. It was in no way connected with the offense; and the arrest and imprisonment were made after the alleged taking of the property, in the indictment. The effect of this testimony was to prejudice the minds of the jury against the plaintiffs in error. It did not, in any way, tend to elucidate the issue, and falls clearly within the principle *344 settled by this Court in the case of Martin Shaw vs. The State, 3 Sneed, 88; and it was error in the Circuit Judge to receive it.
The judgment of the Circuit Court will be reversed, and a new trial awarded.